Robinson, J.
An inspection of the case of Shearer v. Board of Education of Stark County, the case with which the court of appeals of the Third Appellate District found its judgment to be in con *298 flict, discloses that the question there under consideration was the construction of Section 4736, General Code, as it existed in 106 Ohio Laws, 397, prior to the last amendment thereof in 108 Ohio Laws, pt. 1, 707.
We conclude from an inspection of the journal entry of the court of common pleas in this case, and of the journal entry of the court of appeals in connection with its certificate of conflict, that the only question raised and decided in the courts below was as to the scope and effect of Section 4736, General Code, and the extent, if at all, in which the construction of that section is controlled by Sections 4692, 4735-1 and 4735-2, General Code, with reference to the power of a county board of education, in the proper exercise of its discretion, to create a new district out of one entire existing district and a part of another existing district, and the limitations upon that power by a remonstrance of the electors. We will, therefore, confine our consideration to that subject. Board of Commissioners of Mercer County v. Deitsch, 94 Ohio St., 1; State v. Wirick, 81 Ohio St., 343; Springfield, Jackson & Pomeroy Rd. Co. v. Western Ry. Construction Co., 49 Ohio St., 681; Pollock v. Cohen, 32 Ohio St., 514; 3 Corpus Juris, 694, 727, 794.
A review of the extensive and ever.changing legislation of this state upon the subject of its public schools, their management by the various boards, the various means of selecting such boards, and the various modes of creating and changing districts and apportioning territory and pupils among the districts, is interesting only as illustrative of the *299 evolution of our present public school system, in keeping with the changing standards of comfort, health and education.
The fact that almost each succeeding general assembly has seen fit to revise or repeal the school legislation of its predecessor is instructive only in its emphasis of the fact that any system thus far discovered and adopted has failed to give general satisfaction. The whole structure having been built piecemeal by different legislators living at different times under different conditions and having in view different standards of attainment, the usual result has followed, to-wit, an inconsistent, inharmonious, and in some respects unintelligible code governing the powers and duties of boards of education ; and it is this situation which gives rise to the conflict between the conclusion arrived at by the lower courts in the instant case and the conclusion reached in the case of Shearer v. Board of Education, above referred to.
Before the creation of the county board of education, provision was made for township boards, special district boards, and the various other varieties of school boards then by law existing, to agree among themselves upon the distribution of territory, and provision was made for an appeal to. the probate court. The operation of that system resulted in much litigation, for.it was early discovered that each district was ambitious to hold all the taxable territory it had, and seldom were the boards able to agree upon the transfer of territory from a large and well-financed district to a small and poorly-financed district. In consequence the juris *300 diction of the probate court was constantly invoked with often unsatisfactory results, and it was, in part at least, to obviate the constant contention between adjoining districts for possession of taxable territory that the present system of a county board of education was adopted. The legislature, with a view primarily to furnishing better, and, as near as might be possible, equal, school facilities and advantages to all the pupils of the state, provided that each county board upon its organization should make a survey of its county district and arrange the school districts according to topography and population in order that each school might be most easily accessible to the pupils. The county board was authorized to change the boundary lines of districts without regard to township lines, provision was made for equalizing the property valuation of adjoining rural districts, a minimum area for each rural school district was prescribed, and provision was made for an equitable division of funds and indebtedness among the new districts. As thus adopted the provision was applicable to all the county school districts of the state; and, presumably, the various county boards of education complied with the provision and each re-arranged and established its various school districts according to topography and population with a view to establishing in rural districts as nearly an equal property valuation as could be obtained, and none containing less than 15 square miles.
The provision then having served its purpose, the school districts of the state having been arranged according to topography and population with *301 reference to the accessibility of its schools to the pupils, adjoining rural districts having been so redistricted as to be as nearly equal as possible in property valuation, and all rural districts containing 15 square miles or more, the legislature repealed the section in toto and adopted in its stead present Section 4736, General Code, which contains no provision as to topography and population, no provision as to accessibility of schools to pupils, no provision as to approximate equality of property valuation of adjoining districts, and no minimum area for any district.
It will not be presumed that the legislature by the repeal of an existing statute and the enactment of a different statute upon the same subject did not intend to change the effect of the law as it existed prior to the repeal, but on the contrary it will be presumed that it was the intention and purpose of the legislature by the repeal of the old and the enactment of the new to change the effect and operation of the statute to the extent of the change in the language thereof, and that, having taken out of the statute the requirement that the district should be arranged according to topography and population, the legislature no longer intended to require such arrangement, but relied upon the sound judgment of the county board of education, having in mind the improved facilities of transportation, to make such arrangement of the territory of the respective districts as would best serve the comfort, health and education of the pupils. Having left out of the new enactment the provision that adjoining *302 rural districts should be made as nearly equal as possible in property valuation, it will be presumed that it no longer intended to require boards of education to make adjoining rural districts approximately equal in valuation, but left to the sound discretion of the county board of education the power and obligation of so arranging the various districts with reference to valuation as would best serve the needs of the respective districts; and that having left out of the newly-enacted section the minimum-area provision, it no longer intended to require the county board of education to observe such minimum area. In short, that in so far as it repealed the theretofore specific limitations upon the power and discretion of the county board it to that extent intended to and did enlarge the discretion of such board, and that in changing by various enactments under the same sectional number the language of Section 4736, which as amended in 104 Ohio Laws, 138, read, “To this end the county board shall have power by resolution at any regular or special meeting to change school district lines and transfer territory from one rural or village school district to another,” so as to now read, “The county board of education may create a school district from one or more school districts or parts thereof,” it intended to vest in the county board a different and additional power than that vested by the former section.
Coming now to the consideration of the construction of Section 4736, General Code, with reference to Section 4692, General Code, while it is difficult to distinguish between the creation, as in the instant *303 case, of a district from one entire district and a portion of an adjoining district, giving to such created district a new name and appointing, a new board, under Section 4736, General Code, and the “transfer [of] a part * * * of a school district * * * to an adjoining district,” retaining the name and board of the adjoining district, under Section 4692, General Code, yet we know of no inhibition upon the power of the legislature in that respect; and if it in its wisdom has seen fit to make a distinction by name and board only, and has failed to indicate a difference in any other' respect, that of itself does not vitiate the legislation, nor make the one section conflict with the other. If, however, such conflict did exist we would still be obliged to hold that Section 4736, being the last expression of the legislature upon the subject, would control.
Nor are we able to find that Sections 4735-1 and 4735-2, General Code, enacted in 1914, qualify Section 4736, General Code, enacted in 1919, and are of opinion that even though they were of concurrent enactment Sections 4735-1 and 4735-2 are only effective to dissolve and transfer an entire existing district to another existing district upon the initiative of the electors of the district seeking dissolution and union with another district, or upon the initiative of the board of such district seeking dissolution and union with another district, thereby enabling such district to accomplish such a union with an existing district without the aid of and probably in spite of the county board of education, and in no way limit the power or the discretion *304 vested in the county board to accomplish the same or a similar result by its own action, and that the only limitation upon the power and discretion vested in the county board of education by Section 4736, in the absence of fraud, bad faith, or the taking of such arbitrary, whimsical and unreasonable action by the board as amounts to an abuse of discretion, is the limitation expressed in the section itself.
Having reached this conclusion it follows that a remonstrance signed by less than a majority of the qualified electors residing in the territory affected by the order creating the school district is not effective to defeat the action of the county board in the creation of such district.
The judgment of the court of appeals, affirming the judgment of the common pleas court overruling the demurrer to the petition, is reversed.

Judgment reversed.

Johnson, Wanamaker, Jones and Matthias, JJ., concur.